CLARKE et al. v. CENTRAL RAILROAD & BANKING CO. OF GEORGIA et al.

CENTRAL RAILROAD & BANKING CO. OF GEORGIA v. FARMERS' LOAN & TRUST CO. OF NEW YORK.

(Circuit Court, S. D. Georgia, E. D. April 17, 1893.)

1. RECEIVERS—POWER TO MAKE LOANS AND PLEDGE ASSETS.
   Where a bill was filed by the president and directors of a railroad company, alleging that, as a result of an unlawful lease and the diversion of its income, it has been embarrassed, but, if properly managed, it may extricate itself from its difficulties, and the court appoints its president receiver for the purpose of preserving the property, and with the aid of the court placing it upon a prosperous footing, and no lien creditors are parties, it is competent for such president receiver, with the authority of the court, to pledge collateral and equitable assets of the company to secure loans necessary to its operation, and also to incur a liability for the expenses of a refunding scheme.

2. SAME—RIGHTS OF LIEN CREDITORS.
   If, however, before such expenses are paid, creditors holding liens upon the property are made parties, the court will not ex parte allow the expenses of such refunding scheme to be paid by the receiver.

(Syllabus by the Court.)

In Equity. Petition by H. M. Comer, receiver of the property of the Central Railroad & Banking Company of Georgia, for an order authorizing the payment of certain expenses. Denied.

For prior opinion, see 50 Fed. Rep. 338.

Lawton & Cunningham and Denmark & Adams, for the motion.

SPEER, District Judge. On March 31, 1893, H. M. Comer, receiver, made his sworn statement and petition to the court, asking that certain expenses, amounting to $7,975.15, stated to have been incurred by a reorganization committee which had, at the request of the Central Railroad & Banking Company of Georgia, through the formal action of its board of directors, undertaken to formulate and perfect a plan to relieve that corporation from the financial embarrassment under which it was then suffering, should be approved by the chancellor, so as to make the same chargeable against the equity of redemption belonging to the Central Railroad & Banking Company of Georgia, in certain securities pledged by that company to said reorganization committee for moneys advanced. This is the first application for the allowance of such expenses. The court has taken time for consideration, and, after careful deliberation, declines, in the present state of the record, to grant the approval asked. The reasons for this action are the following: On January 10, 1893, when the order of that date, above referred to, authorizing the pledge of said securities, was passed, the attitude before the court of the proceedings then filed was as follows: Rowena M. Clarke et al., minority stockholders, had filed their bill alleging that the board of directors of the Central Railroad & Banking Company of Georgia, acting when the bill was presented, had been illegally elected. A majority and controlling interest in the stock of the Central Railroad

& Banking Company of Georgia, it was alleged in said bill, had been bought up by the Richmond Terminal Railway & Warehouse Company, a company controlling lines of railway competitive to the Central Railroad & Banking Company of Georgia. That this purchase was in contravention of the constitution and laws of the state. The bill further charged that said stock, so illegally acquired, had elected the then acting board of directors. This board had proceeded to turn over the entire properties of the Central Railroad & Banking Company of Georgia to the Richmond & Danville Railroad Company, operating one of the competitive lines controlled by said terminal company. This abandonment of the franchises of the Central Railroad & Banking Company of Georgia, the bill alleged, had been accomplished by a pretended and illegal lease.

To this bill the Richmond & Danville Railroad Company answered, and did not deny that it was in illegal possession of the property, but, on the contrary, disclaimed all right to the possession which it exercised, and stated that it had been for nine months operating the properties merely at the request of another railroad company. It formally relinquished the properties to the custody of the court and the Central Railroad & Banking Company of Georgia. Upon the hearing, the court, the circuit judge and district judge presiding, reached the conclusion, as appears by the decree of the court, that the then acting board of directors had been illegally elected, and that the majority stock above referred to was not entitled, under the constitution and laws of this state, to vote in elections controlling the operation of the Central Railroad & Banking Company of Georgia. The voting power of the stock was enjoined, a new election ordered, and the court appointed receivers, not for the purpose of subjecting the properties to the claims of creditors, but to protect and to preserve them until they could be turned over to a legally elected board of directors, as proper trustees, who would have the right under the law to take and operate the railroad in the interest of all concerned. The court further directed that, when this new election should have taken place, said new board of directors might apply to the court to have the property returned to the control of the properly constituted officers of the corporation.

This election was held, and the new board of directors elected by stock legally entitled to vote; but the new board of directors, instead of applying to the court for the property, presented and filed an ancillary proceeding or bill in behalf of the corporation. By this bill the court was informed that on account of the embarrassed condition of the company's finances, brought about by the abandonment of the control of the property by the former board of directors and the misappropriation of its income, the said new board of directors, as directors, could not undertake the management of the properties, and that, while the corporation was not insolvent in the ordinary acceptation of that term, yet it was insolvent in the sense that its debts due, and about to be due, were so pressing and so great, and its credit had been injured to such an extent, that it could not, in the ordinary way, meet its obligations. The bill further alleged that one of the chief values of the properties consists

in the fact that they constitute a great system of railways. This system was held together by means of stock ownership and otherwise, the right of possession and control of the Central Railroad & Banking Company of Georgia extending over the entire system; and the various parts were held together by the fact that the equity existing in each belonged to the Central Railroad & Banking Company of Georgia. The bill also asked the court to continue to hold possession of the property, discharging all of the board of directors previously appointed receivers, ·with the exception of Mr. H. M. Comer, who was the president of the Central Railroad & Banking Company of Georgia. The bill asked also that certain creditors of the Central Railroad & Banking Company of Georgia, whose debts were due, or about to be due, should be made parties defendant; that they should come into court and say what was best to be done for the interest of all concerned in the then status of the property. While the proceedings in court were in this situation, and before any of the creditors of the Central Railroad & Banking Company had filed proceedings to foreclose any lien on the properties, or the appointment of a receiver to reach any of these equitable assets, the receiver who was continued under the Rowena Clarke bill, and under the bill, above described, of the Central Railroad & Banking Company, and who was also president of the latter company, applied to the court to confirm the contract proposed in his petition of January 10, 1893, by virtue of which this application is presented, stating in his application, among other things, that it was necessary to continue the operations of the road. At that time it was contended by the Central Railroad & Banking Company of Georgia that it was abundantly able to pay all its creditors, if its property could be rehabilitated; and, although the Central's bill had been filed for several months, no creditor had come into the proceedings to dispute that contention. Moreover, it did not appear that any creditor had any special lien upon the equity of redemption of the securities of the Central Railroad & Banking Company of Georgia sought to be pledged by this contract. The receivership, as it then existed, constituted a trust of a somewhat unusual, but entirely salutary, character. It was created, as stated, in an effort to tide over the present difficulties of vast, valuable, and probably solvent, though badly embarrassed, properties, an embarrassed condition mainly occasioned by unlawful causes. It was not designed to deter the lawfully elected president and board of directors, by the use of the available assets, values, and equities in their control, from meeting any pressing debts, and renewing and extending liabilities, so that the company might continue its duty to the public as a common carrier, and to preserve its properties until it had an opportunity to use its strong advantages as a railroad. At no time, until a creditor's bill was filed, did the president and directors cease to avail themselves of this right. Contracts made by the receiver president were reported to the directory. That body designed a rehabilitation plan, and it also adopted and promulgated a refunding scheme, known as the "Reorganization Plan." In view of these facts, there seemed to be no reason why the Central Rail-

road & Banking Company of Georgia, through its president and receiver, was not competent to borrow money which, as stated in the petition, was to be used on account of the Central Railroad & Banking Company, and to contract to pay the expenses of the committee selected by the corporation, and acting for it in the rehabilitation of the properties, and the refunding of its indebtedness. The court therefore authorized the contract proposed by the receiver and president of such corporation for it, except as to the expenses provided for in said sixth clause, the court reserving the right to pass upon these expenses thereafter, and this application is presented for that purpose. It is true, however, that since the order of January 10, 1893, was made, the attitude of the parties has been greatly changed. Since then the Farmers' Loan & Trust Company of New York has filed a bill on its mortgage, and the receivership existing under the former proceeding has been extended to that bill, and modified so as to enable that creditor to reach certain equitable assets of the Central Railroad & Banking Company through the receivership. Other creditors have also intervened, or filed collateral proceedings upon liens against various properties of the Central Railroad & Banking Company of Georgia. Whether, in view of the changed aspect of the receivership, it would be competent for the court to allow these expenses, it is now unnecessary to decide. It is sufficient to say that these changes in the litigation have introduced new parties into the suit, with new equities, and that they are entitled to be heard upon this question. For these reasons the allowance of these expenses will not be made, unless upon notice to all parties to the record, or until the final decree of the cause; and it will be so ordered. In open court, this 17th day of April, 1893.